UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMPREHENSIVE CARE
CORPORATION,

        **Plaintiff,**

vs.                                            Case No. 8:10-CV-942-T-27TGW

JERRY KATZMAN and
MARGARET "PEGGY" HUSTED,

        **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Temporary Restraining Order to Prevent Insider Trading (Dkt. 42), to which Defendants have responded (Dkt. 44). As Plaintiff fails to demonstrate a likelihood of success on the merits, a hearing on the motion is unnecessary.

### *Background*

Plaintiff filed this action on April 21, 2010. Plaintiff initially sought a temporary restraining order to prevent what Plaintiff believed to be the imminent sale of the stock shares at issue in this lawsuit. In support of the motion, Plaintiff's Co-Chief Executive Officer, board chairman, and corporate counsel, Clark Marcus, averred that since January, 2010, Defendant Husted's broker had been requesting the immediate removal from the shares of a restrictive legend so that Husted could sell the shares in the public marketplace. (Dkt. 1-1, ¶ 18).

Plaintiff's motion for a temporary restraining order was granted in part on April 23, 2010 and a hearing on Plaintiff's motion for preliminary injunctive relief was scheduled for May 6, 2010.

1

(Dkt. 14). On May 3, 2010, Plaintiff filed an emergency motion to continue the preliminary injunction hearing in light of the need for Marcus to attend a business meeting in Puerto Rico relating to it being "a finalist to be the successful bidder on a $40 Million behavioral and pharmacy management contract with MMM," which John Hill, Plaintiff's Co-CEO, John Hill, described as "the largest contract in CompCare's history." (Dkts. 20, 21). E-mails describing the meeting were filed in support of Plaintiff's motion (Dkt. 22). The motion was granted and the hearing was continued and conducted on May 25 and June 7, 2010. Based on findings announced at the conclusion of the hearing, a June 8, 2010 Order (Dkt. 39) dissolved the TRO and denied Plaintiff's motion for a preliminary injunction.

Plaintiff now believes that Defendant Husted has begun selling the shares that, as Plaintiff then believed, *see* Dkt. 1-1, ¶ 22, Defendants were about to sell at the outset of this action. In the instant motion, Plaintiff seeks a second temporary restraining order based on a new theory, that the sales constitute insider trading in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiff contends that Husted, although by all accounts an "outsider," is selling the shares based on material, non-public information about the MMM business opportunity she and Katzman learned during the course of this lawsuit from discussions in court and motions filed by Plaintiff in the public record.

In response, Defendants argue, *inter alia*, that (a) the information in question is neither non-public nor material; (b) the key paragraph of Plaintiff's supporting affidavit is based on information and belief, not personal knowledge; (c) Plaintiff has not asserted a "claim" for insider trading in the

Complaint;[1] (d) Husted owes no duty of loyalty to Plaintiff and Plaintiff did not entrust the information in the court filings (none of which Plaintiff sought to seal pursuant to Local Rule 1.09[2]) to Husted in confidence; (e) the volume of Husted's sales is somewhat less than Plaintiff suggests, comparable trading volume has occurred several times in the past three months (as evidence by an attached daily trading chart), and, judging from the current share price, Husted's sales did not affect the share price;[3] and (f) the motion is merely a bad faith attempt to prevent Defendants from raising funds needed to pay counsel for services in the related lawsuit, 8:09-cv-1375-T-24TBM (M.D. Fla.).

### *Standard*

Temporary injunctive relief may be granted if the movant demonstrates: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

Plaintiff has not demonstrated a likelihood of success on the merits of an insider trading claim under Section 10(b) and Rule 10b-5. Even if Plaintiff were not barred by the purchaser-seller rule from suing under Section 10(b),[4] information about the MMM business opportunity was

---

[1] The Complaint does assert a claim under Section 10(b) and Rule 10b-5, although based on different factual allegations. *See* Dkt. 1, ¶¶ 48-54.

[2] On June 10, 2010, Plaintiff filed a "Notice of Intent to Seek Redaction" of the transcript of the May 25, 2010 hearing. Plaintiff has not sought to seal the emergency motion.

[3] None of these assertions of fact is supported by an affidavit or declaration.

[4] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975) (holding that a plaintiff who is neither a purchaser nor seller of a security has no private cause of action for damages under Rule 10b-5); Ralph C. Ferrara, *et al.*, Ferrara on Insider Trading & The Wall § 3.03 ("*Blue Chip Stamps*'s holding that plaintiffs have standing to sue under Rule 10b-5 only if they were actual purchasers and sellers of securities clearly forecloses one type of victim of insider trading from suing for damages: sources of information who are deceived by a

3

disclosed in and made a part of the public record by Plaintiff's emergency motion, supporting documents, and statements made in open court by counsel. Moreover, even assuming this information constituted material, non-public information, Plaintiff identifies no fiduciary or equivalent duty owed by Defendant Husted that would support liability under the "misappropriation" theory of insider trading. *See United States v. O'Hagan*, 521 U.S. 642, 652 (1997) ("Under [the misappropriation] theory, a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information."); *S.E.C. v. Yun*, 327 F.3d 1263, 1269 (11th Cir. 2003) ("The liability under the [misappropriation] theory is based on the notion that the outsider breaches 'a duty of loyalty and confidentiality' to the person who shared the confidential information with him."); *id.* at 1271 ("[T]o prevail in an insider trading case [under the misappropriation theory], the SEC must establish that the misappropriator breached a duty of loyalty and confidentiality owed to the source of the confidential information.").[5]

The affidavit attached to the motion does not remedy this deficiency, and it fails to satisfy the requirements of Fed. R. Civ. P. 65(b)(1)(A) and Local Rule 4.05(b)(2). In the affidavit,

---

misappropriator's trading within the meaning of Rule 10b-5, but who have not purchased or sold the securities that were traded by the misappropriator."); *Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 555-59 & n.27 (11th Cir. 1984) (noting split of authority as to whether a cause of action exists for a non-purchaser-seller under section 10(b) for *injunctive relief* but holding that there is no implied right of action in an issuer of the securities involved in a purchase made in violation of rule 10b-5 to compel the wrongdoer to rescind the transaction or otherwise divest himself of the securities acquired). *But cf. Davis v. Davis*, 526 F.2d 1286, 1289-90 (5th Cir. 1976) (suggesting in dicta that the purchaser-seller requirement does not apply to suits for injunctive relief).

[5] *See also* Donald C. Langevoort, 18 Insider Trading Regulation, Enforcement and Prevention § 6:4 ("The misappropriation theory rests on the assumption that it is fraudulent and deceptive for a person to misuse information for personal gain that has been 'entrusted' to him. So articulated, the theory first requires a showing that some sort of a fiduciary relationship existed between the defendant and the source of the information, for outside of that sort of relationship, there is no independent duty to observe another person's confidences or avoid profiting from information received.").

Plaintiff's Chief Accounting Officer, Robert Landis, merely states, based on information on belief, that he believes that Defendants are trading with knowledge of material non-public information acquired in this litigation, Dkt. 41-4, ¶¶ 4, 7, and that the trading will immediately and adversely impact the MMM business opportunity and harm Plaintiff's reputation with investors and potential business partners, *id.* ¶¶ 5-8.

As Plaintiff has not demonstrated a likelihood of success on the merits, the Court need not address the remaining elements required for temporary injunctive relief. Plaintiff's Motion for Temporary Restraining Order to Prevent Insider Trading (Dkt. 42) is **DENIED**.

**DONE AND ORDERED** in chambers this 21st day of June, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

5