UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**COMPREHENSIVE CARE
CORPORATION,**

        **Plaintiff,**

vs.                                             Case No. 8:10-CV-942-T-27TGW

**JERRY KATZMAN and
MARGARET "PEGGY" HUSTED,**

        **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant Peggy Husted's Motion to Dismiss Comprehensive Care Corporation's Verified Complaint for Injunctive and Other Relief or, Alternatively, for a More Definite Statement (Dkt. 28), to which Plaintiff has responded (Dkt. 34). Upon consideration, the motion is GRANTED in part.

### *Background*

The Verified Complaint (the "Complaint" [Dkt. 1]) includes the following allegations. Core Consulting Group ("Core") is a Delaware corporation with its principal place of business in Maryland and is a wholly owned subsidiary of Plaintiff Comprehensive Care Corporation ("CompCare"). April 20, 2010 Affidavit of Clark Marcus ("Marcus Aff." [Dkt. 1-1][1]) ¶¶ 4, 19. Defendant Jerry Katzman was one of three co-founders of Core and Senior Vice President and Secretary of Core. Dkt. 1 ¶ 16. Core's other two-founders were Clark Marcus, Core's Chief

---

[1] The Marcus Affidavit is attached to and incorporated by reference in the Complaint. *See* Fed. R. Civ. P. 10(c).

1

Executive Officer and the chairman of its board of directors, and Guiseppe Crisafi, who in addition to being Core's chief financial officer was a member of the board. *Id.* Defendant Peggy Husted is Katzman's companion. *Id.* ¶ 3.

At some time before January 20, 2009, Katzman directed Crisafi, who was responsible for the issuance of all Core shares, to issue 3,250,000 shares of Core's Class B Common Stock to Husted. *Id.* ¶ 20. "Katzman represented to Crisafi that the shares were being issued to Husted appropriately for good and valuable consideration." Dkt. 1 ¶ 21.[2] In reliance on Katzman's representation as a senior executive of Core, Crisafi directed the issuance of the shares to Husted. Dkt. 1 ¶ 21.[3] However, both Katzman and Husted knew at the time the shares were issued that Husted was not a Core employee and had rendered no services for Core and that "there was no consideration for even a single share of Core stock to be issued." *Id.* ¶¶ 22-23; *see also* Marcus Aff. ¶¶ 7-8, 11.

About January 20, 2009, pursuant to a merger agreement, all of Core's outstanding shares were acquired by CompCare, which is a Delaware corporation with its principal place of business in Florida. Dkt. 1 ¶¶ 2, 29. As part of the acquisition, Core shareholders were required to surrender their Core shares for cancellation in exchange for shares of CompCare common stock. *Id.* ¶ 30. Husted surrendered her Core shares and received in exchange 1,995,959 shares of CompCare's common stock (as well as 3,966 shares of CompCare's convertible preferred stock). *Id.* ¶¶ 6 n. 1, 31-32.

---

[2] *See also* April 20, 2010 Affidavit of Guiseppe Crisafi ("Crisafi Aff." [Dkt. 1-2]) ¶ 6. *But cf.* Marcus Aff. ¶ 9 ("*Implicit* in [Katzman's instructions to Crisafi to issue the shares] was the representation that consideration had been received by Core for issuance of said shares.") (emphasis added)

[3] *See also* Crisafi Aff. ¶ 6; *cf. id.* ¶ 13 (stating that the shares "were issued entirely upon the request of Defendant Katzman and his representation to me that consideration had been received by Core *from Ms. Husted*.") (emphasis added).

2

In January, 2010, CompCare learned that Katzman and Husted were seeking to obtain the removal from Husted's CompCare shares of a standard restrictive legend pursuant to Securities and Exchange Commission Rule 144 restricting their public sale. *Id.* ¶ 35. As a result, CompCare initiated an investigation to determine (1) how Husted, a non-employee of Core and CompCare, came to possess almost two million shares of CompCare stock and (2) whether those shares were issued for good and valuable consideration. *Id.* ¶ 36; Marcus Aff. ¶ 19.

As part of the investigation, CompCare reviewed Core's minutes, interviewed corporate officers, and reviewed employment and payroll records and contracts. *Id.* CompCare determined that Core had no record showing that the Core shares were issued for consideration, Dkt. 1 ¶ 26, and that "literally no one in the corporation had any knowledge as to the basis upon which [the Core] shares were issued to Ms. Husted since said shares were issued entirely upon the request of Defendant Katzman and his representation to [Crisafi] that consideration had been received by Core from Ms. Husted." Crisafi Aff. ¶ 13.

CompCare also reviewed Katzman's and Husted's depositions in a related lawsuit, *Comprehensive Care Corporation v. Katzman*, No. 8:09-CV-1375-T-24-TBM (the "related lawsuit"). Dkt. 1 ¶ 37. The Complaint quotes deposition testimony from the related lawsuit in which (a) Katzman denied that he requested the issuance of the Core shares to Husted and stated his understanding or belief that the Core shares were issued to Husted as non-employee compensation for work she did for Core (or possibly for Marcus) and were subsequently exchanged for CompCare shares as a result of the acquisition, *id.* ¶ 38, and (b) Husted stated that Katzman *gave* her more than one million CompCare shares. *Id.* ¶ 40. CompCare concluded that, as Husted had never worked for Core, Husted's testimony that Katzman gave her the shares was more credible "and that there was

no consideration whatsoever for the issuance of the Core shares or CompCare shares to Husted." *Id.* ¶ 41.

In sum, the CompCare investigation "conclusively determined . . . that there was no consideration for the [CompCare] shares held by Husted and that they were unauthorized and obtained through fraud and collusion." *Id.* ¶ 42.[4] Accordingly, CompCare took steps to cancel the shares, which it believed were voidable under Delaware law. *Id.* ¶ 43.

In a January 21, 2010 letter to Husted, CompCare (a) informed Husted that the CompCare shares issued to her were issued without consideration as required by Delaware law and had been canceled and (b) demanded return of the CompCare stock certificates. *Id.* ¶ 44 & Ex. F (Dkt. 1-6). Husted refused and continued to seek the removal of the restrictive legend to permit sale of the shares. *Id.* ¶ 45.

The Complaint alleges in Count I that Katzman's and Husted's conduct violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Count II asserts a claim for conversion of the CompCare shares. Dkt. 1 ¶¶ 56-58.[5] The Complaint seeks (i) damages, (ii) an order enjoining Defendants from selling or transferring the CompCare shares, enjoining the stock transfer agent from removing the restrictive legend from the CompCare stock certificates, and directing the deposit of the certificates into the Court's registry pending a resolution of the merits, (iii) and attorney's fees and costs. *Id.* at 14-15.

---

[4] *See also* Marcus Aff. ¶ 20 ("As a result of its internal investigation, Plaintiff discovered, for the first time, that in fact the Shares were not issued for good and valuable consideration, or any consideration at all, for that matter.").

[5] Count III, for breach of fiduciary duty, is directed only at Katzman, whom Plaintiff voluntarily dismissed from this lawsuit on December 14, 2010 (Dkt . 65).

*Discussion*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id.* at 1950. A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

> Section 10(b) of the Exchange Act makes it unlawful
>
> for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

To state a claim for a violation of Section 10(b),[6] a plaintiff must allege: "(1) the existence of a material misrepresentation (or omission), (2) made with scienter (*i.e.*, 'a wrongful state of mind'), (3) in connection with the purchase or sale of any security, (4) on which the plaintiff relied,

---

[6] Because "[t]he scope of Rule 10b-5 is coextensive with the coverage of § 10(b)," *S.E.C. v. Zandford*, 535 U.S. 813, 816 n.1 (2002) (citations omitted), this order uses Section 10(b) to refer to both.

and (5) which was causally connected to (6) the plaintiff's economic loss." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010) (citing *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

"Because Rule 10b-5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity." *Thompson*, 610 F.3d at 633 (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (Fed. R. Civ. P. 9(b) requires securities fraud complaints "to state with particularity the circumstances constituting fraud")). Rule 9(b)'s particularity requirement "is satisfied if the complaint sets forth '(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Additionally, under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, a private plaintiff pleading a Section 10(b) claim must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citation omitted).[7] Specifically, a plaintiff alleging that a defendant made an untrue statement of material fact (or omitted to state a material fact necessary in order to make the

---

[7] Although the Eleventh Circuit does not appear to have addressed the issue, other courts have held that the PSLRA's heightened pleading requirements generally apply to individual as well as class actions. *See Klein v. Autek Corp.*, 147 Fed. App'x. 270, 274 (3d Cir. 2005); *Meram v. Citizens Title and Trust, Inc.*, No. 10cv1388, 2011 WL 11463, at *3 (S.D. Cal. Jan. 3, 2011); *cf. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) ("[T]he PSLRA . . . imposed heightened pleading requirements . . . upon 'any private action' arising from the Securities Exchange Act.") (quoting 15 U.S.C. § 78u-4(b)); *Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003).

statements made, in the light of the circumstances in which they were made, not misleading) must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(A)-(B). The plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

A "strong inference" of scienter is one that is "more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs.*, 551 U.S. at 314. Moreover, "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Thompson*, 610 F.3d at 634 (quoting *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017-18 (11th Cir. 2004)).

In the Eleventh Circuit, Section 10(b) requires "a showing of either an intent to deceive, manipulate, or defraud, or severe recklessness." *Thompson*, 610 F.3d at 634 (citation and internal quotation marks omitted). "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir. 1999). Accordingly, to survive a motion to dismiss, a Section 10(b) plaintiff must plead with particularity facts giving rise to a strong inference that "the defendants either intended to defraud . . . or were severely reckless when they made the allegedly materially false or incomplete statements." *Thompson*, 610 F.3d at 634 (quoting *Mizzaro*, 544 F.3d at 1238).

Under Florida law, conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984) (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858 (Fla. 1948)). Conversion "may occur where a person wrongfully refuses to relinquish property to which another has the right of possession," and it "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994)). However, "[t]here can be no conversion where a person consents to the possession by another of the assets allegedly converted." *In re General Plastics Corp.*, 184 B.R. 996, 1004 (Bkrtcy. S.D. Fla. 1995) (citing *Nat'l Bank of Melbourne v. Batchelor*, 266 So.2d 185, 187 (Fla. 4th DCA 1972)). *But cf.* Restatement (Second) of Torts § 252A (1965) ("Consent to possession of a chattel obtained by fraud . . . is not effective to prevent recovery . . . for conversion against any one other than a bona fide purchaser of the chattel.").

Under Delaware law, shares of stock must be issued for consideration having a value (not less than the par value thereof, if any) determined by the board of directors (or by the shareholders if the certificate of incorporation so provides). Del. Code Ann. tit. 8, § 153. The consideration may include "any benefit to the corporation" (*e.g.*, services rendered), and if the board elects to receive non-cash consideration for stock, its judgment in regard to the value of the consideration received is conclusive in the absence of "actual fraud in the transaction." Del. Code Ann. tit. 8, § 152. *See also Fonds de Regulation et de Controle Café Cacao v. Lion Capital Mgmt., LLC*, No. 1509-N, 2007 WL 315863, at *4 n.9 (Del. Ch. Jan. 22, 2007). Although Section 152 requires directors to place a

value upon consideration for stock issued, "this valuation need not be formally recorded." *Id.* (citing *Bowen v. Imperial Theatres*, 115 A. 918, 920 (Del. Ch. 1922)).

Finally, although whether stock issued without consideration is void or only voidable under Delaware law "is not as clear as it could be," *MBKS Co. Ltd. v. Reddy*, 2007 WL 2814588, at *6 (Del. Ch. 2007), "the modern trend of the law is that 'an issuance of stock without receipt by the company of valid consideration is void,'" *id.* (quoting *Fonds de Regulation et de Controle Café Cacao*, 2007 WL 315863, at *4); *see also* 11 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5166 ("Certificates may be canceled where the shares represented were without consideration . . . or where there is a total failure of the consideration.") (citing cases).

The Complaint fails to state a Section 10(b) claim against Defendant Husted. Although reciting the language of Rule 10b-5 and alleging in conclusory fashion that both Defendants "made untrue statements of material fact or omitted to state material facts necessary to make the statements [they made] not misleading," Dkt. 1 ¶ 50, Plaintiff does not allege any specific misstatement, omission of a fact she had a duty to disclose, or conduct by Husted that, in connection with the issuance of either the Core or the CompCare shares, deceived Plaintiff or Core.

Instead, Plaintiff alleges generally that Husted knew the Core shares were issued without consideration, Dkt. 1 ¶ 23 and that Husted conspired with Katzman to exchange the Core shares for CompCare stock, *id.* ¶ 5. Additionally, Marcus states his belief that at the time of the issuance of the Core shares, Husted knew that Core was in negotiations for its acquisition by CompCare, *id.* 12, and he "submits" that at the time the Core shares were issued, Katzman and Husted conspired to take unspecified actions in violation of Katzman's fiduciary duty to Core, *id.* 27.

Because Plaintiff alleges no deceptive statement or conduct by Husted, the Complaint neither

9

satisfies Rule 9(b)'s particularity requirement nor states a claim for relief under Section 10(b). *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 191 (1994) (holding that there is no private right of action for aiding and abetting a Section 10(b) violation); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159-60 (2008) (plaintiff's invocation of "scheme liability" did not "answer the objection that [plaintiff] did not in fact rely upon [defendants'] *own* deceptive conduct.") (emphasis added).

Favorably construed, however, the Complaint adequately alleges a claim for conversion under Florida law. Notwithstanding Plaintiff's vague allegations as to the content of Katzman's alleged misrepresentation and the manner in which it misled Core,[8] the Complaint adequately alleges that (a) the CompCare shares were issued based on a belief that Husted owned the Core shares she surrendered in exchange; (b) that belief was fraudulently induced by Katzman and, in any event, no consideration was in fact received for the Core shares; (d) the Core shares were therefore void or voidable under Delaware law; (e) the Core shares could not therefore be consideration for the CompCare shares Husted received in exchange; (f) Husted therefore had no right to possess the

---

[8] The body of the Complaint does not allege that Crisafi understood Katzman to mean that the shares were to be issued for consideration given *by Husted*, who was allegedly a non-employee and a complete stranger to the company, and one whose possession of a large number of CompCare shares, when later discovered, allegedly prompted an immediate corporate investigation. In view of Katzman's alleged relation with Husted and Katzman's position as a founder of Core, the natural inference would be that, when Katzman "represented to Crisafi that the shares were being issued to Husted appropriately for good and valuable consideration," Dkt. 1 ¶ 21, Katzman meant and Crisafi understood Katzman to mean consideration previously provided *by Katzman himself*, i.e., for what Plaintiff in another filing described as Katzman's "sweat equity in the company." (Dkt. 54 at 12).

However, that otherwise natural inference is precluded by (a) Crisafi's averment that Katzman said Husted had provided consideration for the shares, Crisafi Aff. ¶ 13, and (b) the Complaint's repeated, unqualified allegation that no consideration whatever was received for the shares, *see* Dkt. 1 ¶¶ 6, 23, 41, 57; Marcus Aff. ¶¶ 20, 25. As they have not been withdrawn, for purposes of this motion these allegations are assumed true. (Plaintiff's assertion in its response that "subsequent live testimony at an evidentiary hearing has modified these allegations" [Dkt. 34 at 5] does not amount to a withdrawal or even a modification of the allegations.) However, the Court notes that in his testimony at the May 25, 2010 hearing, Crisafi stated that at the time, he believed the shares were being issued to Katzman's girlfriend Husted as compensation *to Katzman* in exchange for valuable consideration provided *by Katzman*, viz., Katzman's work (not Husted's), *see* Dkt. 36 at 92, 100-102, and that the issuance of the shares in this manner was authorized by the board, *id.* at 101.

CompCare shares or share certificates; and (g) her refusal to return the share certificates on demand therefore constituted a conversion.

Further, as the allegations are not "so vague or ambiguous that [Defendant Husted] cannot reasonably prepare a response," Fed. R. Civ. P. 12(e), a more definite statement of Plaintiff's conversion claim is not required.

Finally, Defendant's contention that Core is an "indispensable" party in whose absence the case cannot "in equity and good conscience" proceed, *see* Fed. R. Civ. P. 19(b), is rejected. Pursuant to Rule 19(a)(1), a party who's joinder is feasible must be joined, *i.e.*, is a necessary party, if " (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Only if the party's joinder is required under Rule 19(a) and joinder of that party is not feasible does the Court apply the test in Fed. R. Civ. P. 19(b) to determine whether, "in equity and good conscience," the action should proceed in that party's absence. *See City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999).

Defendant contends that complete relief cannot be afforded among the parties absent Core's joinder because (a) "the fabric of Comp Care's Complaint is woven from the circumstances surrounding the issuance of Core stock" (Dkt. 28 at 2) and (b) CompCare does not allege that this lawsuit will resolve all claims Core may have against Katzman and Husted. The former contention does not directly address the relevant standards, and the latter disregards the Rule's focus on

"complete relief among *existing parties*." Fed. R. Civ. P. 19(a)(1)(A) (emphasis added). *See also Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.") (citations omitted).[9]

Additionally as Defendant does not identify any other claims involving the issuance of the Core shares that Core might have or address the likely effect of a judgment in this action on those claims, Defendant provides no basis even for a determination of the likelihood of further litigation. Finally, although a judgment in this action may well have preclusive effect on a subsequent action brought by Core, Defendants fail to explain why CompCare will not adequately represent Core's interests in this action. *See Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir.1999).

## *Conclusion*

For the foregoing reasons, Defendant Peggy Husted's Motion to Dismiss Comprehensive Care Corporation's Verified Complaint for Injunctive and Other Relief or, Alternatively, for a More Definite Statement (Dkt. 28) is **GRANTED** in part.

As to Defendant Husted, Count I is **DISMISSED** with prejudice.

**DONE AND ORDERED** in Tampa, Florida, on this 18th day of January, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[9] In fact, "complete relief" does not even require final adjudication of all claims among existing parties. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 n.5 (3d Cir. 1988) ("[T]he advisory committee note to Rule 19(a) indicates that the question of 'complete relief' may not denote final adjudications of all claims between the parties, so long as the relief actually afforded to the parties in the action is meaningful.").